UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALONZO JOSEPH,<br><br>                    Plaintiff,<br><br>          v.<br><br>R. HAWKINS, et al.,<br><br>                    Defendants. | No.  2:15-cv-0332 JAM KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

        Plaintiff is a state prisoner, proceeding pro se and in forma pauperis, with an action filed pursuant to 42 U.S.C. § 1983.  Plaintiff's second amended complaint is now before the court.

I. Screening

        As plaintiff was previously informed, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

        A district court must construe a pro se pleading "liberally" to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000).  While

1   detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of

2   action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at

3   678 (2009) (citing Bell Atlantic Corp., 550 U.S. at 555). Plaintiff must set forth "sufficient

4   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft,

5   556 U.S. at 678 (quoting Bell Atlantic Corp., 550 U.S. at 570).

6
7
8
9
10

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

11   Ashcroft, 556 U.S. at 678 (citations and quotation marks omitted). Although legal conclusions

12   can provide the framework of a complaint, they must be supported by factual allegations, and are

13   not entitled to the assumption of truth. Id. at 1950.

14   II.   Second Amended Complaint

15       Plaintiff renews his Eighth Amendment claims against Dr. R. Hawkins, plaintiff's treating

16   physician, and Chief Physician C. Smith and Chief Executive Officer ("CEO") Smiley, who

17   addressed plaintiff's grievances concerning his chronic pain. Plaintiff suffers from severe

18   metatarsophalangeal joint and severe spondylolisthesis at the L4-L5, which he claims causes him

19   severe pain requiring daily pain medication and physical therapy. (ECF No. 10 at 5.)

20       Plaintiff alleges that defendant Dr. Hawkins denied plaintiff "medically necessary

21   standard medical care" and "severe chronic pain relief." (ECF No. 10 at 2.) Specifically,

22   plaintiff contends that from 2011 until now, Dr. Hawkins has "repeatedly ignored and failed to act

23   upon plaintiff's complaint of continuing pain, and treated plaintiff with acetaminophen and

24   sulindac for non-steroidal anti-inflammatory drugs." (ECF No. 10 at 5.) Plaintiff contends that

25   he cannot perform his activities of daily living on his current treatment plan, and he can't stop

26   taking the current medication unless a different medication is substituted. (ECF No. 10 at 6.)

27   Plaintiff contends that his condition progressed from worse to severe, and that Dr. Hawkins

28   should have ordered updated x-rays so that the pain management committee ("PMC") would have

1    seen that plaintiff's condition had worsened, and prescribed the appropriate medication.  (ECF

2    No. 10 at 6.)  In addition, plaintiff contends that Dr. Hawkins should have prescribed plaintiff

3    pain relief pending his referral to the PMC.  Plaintiff contends that these failures constitute Dr.

4    Hawkins' deliberate indifference.  In addition to severe pain, plaintiff contends he has suffered

5    loss of some mobility and lack of sleep, which affects his daily activities.  (ECF No. 10 at 7.)

6        Plaintiff asserts that Dr. Smith, as Chief Physician, is responsible for making sure that all

7    the doctors follow proper procedure, and for the "overall well-being of all inmates at Mule Creek

8    State Prison."  (ECF No. 10 at 2.)  Plaintiff claims that Dr. Smith granted plaintiff's

9    administrative appeal, and stated that plaintiff would be referred to the PMC, but that plaintiff's

10   medications would remain the same.  Plaintiff argues that defendant Smith should have

11   investigated plaintiff's claim, and ordered all new x-rays and M.R.I.s, so that the PMC would

12   have current information about plaintiff's condition.  (ECF No. 10 at 9.)  Plaintiff contends that

13   his medications (acetaminophen and sulindac) are not pain medications.  Plaintiff alleges that Dr.

14   Smith "deliberately allowed Dr. Hawkins to violate plaintiff's Eighth Amendment rights."  (ECF

15   No. 10 at 10.)

16       Plaintiff claims that defendant Smiley, as CEO, "is responsible for making sure that all

17   executive orders, decisions, rules and regulations are being followed."  (ECF No. 10 at 3.)

18   Plaintiff alleges that despite granting plaintiff's appeal, defendant Smiley did not take any action

19   on the request, and "failed to exercise his executive power and authority to protect plaintiff's

20   medical rights."  (ECF No. 10 at 11.)  Plaintiff alleges that as CEO, Dr. Smiley "should have

21   contacted" the PMC and inquired about plaintiff's medical issues rather than simply reiterating

22   what Dr. Hawkins recommended.  (ECF No. 10 at 11.)

23   III.  Eighth Amendment Standards

24       While the Eighth Amendment of the United States Constitution entitles plaintiff to

25   medical care, the Eighth Amendment is violated only when a prison official acts with deliberate

26   indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th

27   Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th

28   Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d

1  1091, 1096 (9th Cir. 2006).  Plaintiff "must show (1) a serious medical need by demonstrating

2  that failure to treat [his] condition could result in further significant injury or the unnecessary and

3  wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately

4  indifferent."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  Deliberate indifference is

5  shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need,

6  and (b) harm caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at

7  1096).  The requisite state of mind is one of subjective recklessness, which entails more than

8  ordinary lack of due care.  Snow, 681 F.3d at 985 (citation and quotation marks omitted);

9  Wilhelm, 680 F.3d at 1122.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not

10  support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.

11  1980) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

12  IV.  Discussion

13          Plaintiff's medical conditions and chronic pain constitute a serious medical need.

14          A.  Defendants Dr. Smith and CEO Smiley

15          The court first addresses plaintiff's allegations against Dr. Smith and CEO Smiley, whose

16  roles were limited to their review of plaintiff's first and second level grievances.

17          In his first grievance, plaintiff reported that he has "chronic pain," arthritis, and stated that

18  no one should be forced to deal with "pain and discomfort."  (ECF No. 1 at 30, 32.)  In his request

19  for second level review, plaintiff stated that he was dissatisfied with the second level response

20  because his appeal was about Dr. Hawkins' "not letting the [PMC] make their own decision on

21  what pain medication [plaintiff] might need."[1]  (ECF No. 1 at 31.)  In his request for third level

22  review, plaintiff repeated his concern about Dr. Hawkins' reference to controlled substances, and

---

[1]  Exhibits provided by plaintiff refute his claim that Dr. Hawkins informed the PMC not to give plaintiff a controlled substance.  Both Dr. Smith and CEO Smiley noted that Dr. Hawkins found that plaintiff's medications would stay the same *at that time*, and that plaintiff did not require a prescription for controlled substances *at that time*.  (ECF No. 8 at 20, 23, emphasis added.)  In addition, Dr. Smith noted that Dr. Hawkins said that "no controlled substances will be prescribed *at this time*" and that "a determination for additional pain medications will be made upon the completion of [plaintiff's PMC] Review."  (ECF No. 8 at 20, emphasis added.)  Such appeal responses do not raise an inference that Dr. Hawkins informed the PMC to deny plaintiff stronger pain medication or a controlled substance, and Dr. Smith's response specifically refutes plaintiff's allegation.  Finally, the PMC left open the possibility that opiates for acute pain may be prescribed in the future.  (ECF No. 1 at 50.)

4

1   reported that plaintiff was still in pain.  (ECF No. 1 at 33.)

2          Plaintiff's appeals did not state that he was presently suffering "severe pain," or that his

3   medical condition was worsening.  Rather, he references "pain and discomfort," "chronic pain,"

4   and "arthritis."  Also, plaintiff's focus appeared to be on Dr. Hawkins' reference to controlled

5   substances.  Such grievances are insufficient to put either Dr. Smith or CEO Smiley on notice that

6   further investigation was required.  Because Dr. Smith and CEO Smiley did not address

7   plaintiff's request for third level review, they did not have benefit of plaintiff's July 3, 2014

8   report that he was still in pain.  (ECF No. 1 at 33.)  But even then, plaintiff used the term "pain,"

9   not "severe" or "extreme" pain.  Plaintiff was referred to the PMC which, absent factual

10  allegations not present here, appears reasonable.  The exhibits provided by plaintiff demonstrate

11  that he had a chronic pain intake appointment on May 14, 2014, during the administrative appeal

12  process, and Dr. Hawkins provided plaintiff a referral to the PMC to have plaintiff's case

13  reviewed.  (ECF No. 8 at 23.)  Plaintiff's case was discussed in a PMC meeting on July 29, 2014.

14  (ECF No. 8 at 26.)

15         In addition, during the appeal process, plaintiff received prescriptions for Acetaminophen

16  and for nonsteroidal anti-inflammatory drugs (NSAIDS), "as [plaintiff] [was] able to perform

17  [his] activities of daily living well on [his] current treatment plan," and his prescription for

18  Naproxen, to help with pain, was renewed.  (ECF No. 8 at 23.)  The record reflects that plaintiff's

19  grievances did not put Dr. Smith or CEO Smiley on notice that plaintiff claimed he was suffering

20  from severe or extreme pain or that his medical condition was getting worse, such that earlier

21  intervention was required before he was seen by the PMC.  Similarly there was nothing in the

22  grievance to suggest to CEO Smiley that he should involve himself in the PMC process.

23  Accordingly, plaintiff's claims against Dr. Smith and CEO Smiley should be dismissed for failure

24  to state a claim.

25         Plaintiff also suggests liability on the basis of their supervisorial roles.  The Civil Rights

26  Act under which this action was filed provides as follows:

27  ////

28  ////

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Thus, to the extent that plaintiff alleges that Dr. Smith or CEO Smiley are responsible based on their supervisorial roles, such as executing the duties of their positions, such allegations are insufficient to state an Eighth Amendment claim.

For all of these reasons, the undersigned recommends that plaintiff's Eighth Amendment claims against defendants Dr. Smith and CEO Smiley be dismissed without prejudice.

B. Defendant Dr. Hawkins

Plaintiff now contends that from 2011 until now, his condition has progressed from worse to severe, and that Dr. Hawkins has been aware of plaintiff's medical conditions "because of all the prior medical appointments with [Dr. Hawkins].  (ECF No. 10 at 5.)  Plaintiff asserts that Dr. Hawkins has ignored, refused, and failed to adequately treat plaintiff's repeated pain complaints, and treated him with acetaminophen and sulindac," which plaintiff contends are not pain

1   medications.  (ECF No. 10 at 5, 9.)  Plaintiff contends that he cannot perform his activities of

2   daily living on his current treatment plan, and can't stop taking the current medications unless a

3   different medication is substituted.  (ECF No. 10 at 6.)  Plaintiff contends that Dr. Hawkins

4   should have ordered updated x-rays for proper treatment by the PMC, and should have prescribed

5   pain relief pending the PMC referral, and that such failures constitute deliberate indifference.  In

6   support of his allegations, plaintiff provides April 24, 2015 x-ray reports from x-rays ordered by

7   Dr. Pettersen, which reflect that plaintiff suffers from Grade 1 spondylolisthesis and severe

8   degenerative changes at L4-5; and moderate to severe arthritis at the first metatarsophalangeal

9   joint.  (ECF No. 10 at 15-17.)

10       In addition to treating plaintiff, Dr. Hawkins interviewed plaintiff in connection with his

11   grievance, and provided plaintiff with the pain management intake packet to complete.  (ECF No.

12   1 at 36.)  Medical records submitted with the grievance[2] reflect the following:  December 3, 2009

13   thoracic spine and lumbar spine x-rays, ordered by Dr. Anderson for "pain:"

14           (1)   Generalized   degenerative   disk   disease,   minimal
             spondylolisthesis with spondylolysis at L4-5; (2) Cone-down
15           oblique films of the area may be helpful to better evaluate the
             bowel sounds.
16

17   (ECF No. 8 at 48.)  November 28, 2011 lumbar spine x-ray, ordered by Dr. Horowitz, for

18   "sciatica:"

19           (1) Spondylolisthesis of L4 upon L5 has increased since the last
             examination of 2009; (2) Degenerative disc disease identified at
20           multiple levels, being greatest at L4-5; and (3) No fracture seen.

21   (ECF No. 1 at 46.)  During the appeal process, plaintiff had a chronic pain intake appointment on

22   May 14, 2014, and Dr. Hawkins provided plaintiff a referral to the PMC to have plaintiff's case

23   reviewed.  (ECF No. 8 at 23.)

24   ////

25   _____
[2] Plaintiff's June 6, 2013 x-ray of his left foot was diagnosed as "mild hallux valgus and moderate
26   degenerative changes at the first metatarsal-phalangeal joint."  (ECF No. 1 at 45.)  It is unclear
     whether this report was considered during the appeal process because it bears no "HC Appeals"
27   stamp.  (Id.)  But in Dr. Pettersen's review of the April 24, 2015 x-ray, the doctor noted that
     plaintiff's left foot x-ray test results were "essentially within normal limits or are unchanged and
28   no other provider follow-up is required."  (ECF No. 10 at 18.)

1    Moreover, plaintiff was seen by his primary care physician defendant Dr. Hawkins on

2    April 3, 2014, April 30, 2014, and July 9, 2014, and plaintiff was evaluated by a neurologist on

3    July 17, 2014.  (ECF No. 8 at 26.)

4    On July 29, 2014, plaintiff was seen by the PMC, which noted the reason for plaintiff's

5    consultation:  "Gunshot wound 1985 low back with pain in 1993.  Fell out of bunk 2009.  Left

6    foot pain, bilateral knee pain and LBP [lower back pain].  Average pain 7/10."  (ECF No. 8 at

7    34.)  During the exam, plaintiff reported that the pain was "better with rest," "affects work some,

8    affects sleep very much," and that "remote PT [physical therapy] with little benefit."  (Id.)  The

9    following medications were noted:  "Tramadol, . . . Naproxen, APAP."[3]  (ECF No. 8 at 26, 34.)

10   The PMC's impressions were "progressive DDD [degenerative disc disease] likely systemic,

11   habitus contributory (BMI 40.3)."  (ECF No. 8 at 34.)  The PMC noted that plaintiff was

12   markedly obese, and recommended that plaintiff change his life style and lose weight, continue

13   his medications, and receive a lower bunk chrono.  (ECF No. 8 at 34.)  The committee also

14   determined that

15
16                further treatment with opiates is contraindicated or not helpful.  At
              this time chronic opiate therapy is not indicated or appropriate;
              there are no outcome data studies that support further use of opiates
17            as being effective medical care.  Ongoing medical care to evaluate[]
              need for pain medications in future, including use of opiates for
              acute pain as needed.
18

19   (Id.)  Thus, the PMC determined in 2014 that the use of opiates was inappropriate.  Instead, the

20   July 29, 2014 record demonstrates that the PMC treated plaintiff's pain with Tramadol and

21   Naproxen.

22   Plaintiff must plead enough factual matter to show that Dr. Hawkins acted with deliberate

23   indifference, Jett, 439 F.3d at 1096, and the "the indifference to [his] medical needs must be

24   substantial," Estelle, 429 U.S. at 105.

25   _____

     [3]  Tramadol is an analgesic drug used to relieve pain.  Stedman's Medical Dictionary1859 (27th
26   ed. 2000).  Naproxen is a nonsteroidal anti-inflammatory drug used to relieve pain, tenderness,
     swelling, and stiffness caused by certain forms of arthritis and ankylosing spondylitis.  U.S.
27   National Library of Medicine, MedlinePlus, "Naproxen,"
     https://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html (March 17, 2016).  "APAP"
28   is the abbreviation for acetaminophen, and treats minor aches and pain and reduces fever.  Id.,
     a681004.html.

1    In his second amended complaint, plaintiff again does not allege that he presented to

2    medical or to Dr. Hawkins with complaints of extreme, severe, or chronic pain that went

3    untreated, or that his pain medications were inadequate for his chronic pain.  (ECF No. 10,

4    *passim*.)  Rather, plaintiff appears to contend that Dr. Hawkins should have known based on his

5    knowledge of plaintiff's medical condition.  (ECF No. 10 at 5.)  Moreover, in the third level

6    appeal decision, the reviewer noted that "there is no documentation of CDCR 7362, Health Care

7    Services Request Form, submittals with concern for chronic pain."  (ECF No. 8 at 26.)  Indeed, in

8    his initial grievance, dated April 9, 2014, plaintiff asked to be referred to the PMC for pain

9    management for his chronic pain on his arthritis (ECF No. 1 at 14), and the record reflects that he

10   was referred to the PMC.

11   Plaintiff now claims that he suffers severe pain and is prescribed acetaminophen and

12   sulindac,[4] and appears to contend that such medications are not pain medications but are non-

13   steroidal anti-inflammatory drugs.  But plaintiff fails to allege that he presented to Dr. Hawkins

14   and reported that such medications are insufficient to control his pain.  Rather, plaintiff claims he

15   cannot stop taking the medication without substituting a different medication.  (ECF No. 10 at 6.)

16   Moreover, on April 24, 2015, the same day as the reports from his updated x-rays, Dr. Pettersen

17   reviewed plaintiff's lumbar spine test results and ordered that plaintiff be scheduled for a chronic

18   care appointment.  (ECF No. 10 at 16.)  Plaintiff does not explain what happened at the chronic

19   care appointment.

20   After review of the medical records, appeal responses, and plaintiff's second amended

21   complaint, the undersigned finds that plaintiff fails to allege facts demonstrating that defendant

22   Dr. Hawkins was deliberately indifferent to plaintiff's serious medical needs.  While the

23   undersigned recognizes that plaintiff likely suffers pain as a result of his apparently worsening

24   medical condition, the exhibits provided by plaintiff demonstrate that he received pain medication

25

26   [4] "Sulindac is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis
     (arthritis caused by a breakdown of the lining of the joints), rheumatoid arthritis (arthritis caused
27   by swelling of the lining of the joints), and ankylosing spondylitis (arthritis that mainly affects the
     spine)."  U.S. National Library of Medicine, MedlinePlus, "Sulindac,"
28   https://www.nlm.nih.gov/medlineplus/druginfo/meds/a681037.html, accessed March 17, 2016.

1    and medical care for his chronic pain, including consultation with a neurologist. When plaintiff

2    sought referral to the PMC, he was appropriately referred and prescribed additional pain

3    medication, Tramadol and Naproxen.

4         Plaintiff's claim that Dr. Hawkins should have ordered updated x-rays prior to plaintiff's

5    referral to the PMC demonstrates a mere difference of opinion, particularly in light of the 2011

6    lumbar spine x-ray which reflected that plaintiff's spondylolisthesis had "increased" or gotten

7    worse. (ECF No. 1 at 46.) Thus, the PMC had benefit of such knowledge prior to prescribing

8    plaintiff Tramadol, and confirmed that plaintiff's future need for pain medications would be

9    evaluated, and left open the possibility for opiate use for acute pain as needed. (ECF No. 8 at 34.)

10        In addition, plaintiff contends that Dr. Hawkins should have prescribed plaintiff pain relief

11   pending his referral to the PMC. Plaintiff does not explain whether his Tramadol prescription

12   was discontinued and, if it was, how that occurred. However, on April 24, 2015, in light of the

13   lumbar x-ray results, Dr. Pettersen referred plaintiff for a chronic care appointment rather than

14   prescribe plaintiff a different medication. Just as Dr. Pettersen did not prescribe plaintiff a

15   different pain medication upon receipt of the 2015 x-rays, Dr. Hawkins did not prescribe plaintiff

16   a different pain medication upon review of the 2011 x-ray, instead referring plaintiff to the PMC.

17   Thus, Dr. Hawkins' failure to prescribe pain medication while plaintiff waited for the PMC

18   consult, without more, constitutes a difference of opinion rather than deliberate indifference.

19        The court is concerned that plaintiff now claims that he suffers severe pain. But the

20   deliberate indifference standard presents a high bar that is difficult to meet. Plaintiff fails to

21   demonstrate that he complained of severe pain in 2014, and fails to include new allegations

22   demonstrating that he subsequently made Dr. Hawkins aware that plaintiff is now suffering

23   severe pain, and was deliberately indifferent thereto. Plaintiff was referred to a chronic care

24   appointment on April 24, 2015, yet plaintiff fails to explain how his pain was treated thereafter.

25   Plaintiff fails to allege facts that evidence deliberate indifference rather than plaintiff's lay

26   opinion that Dr. Hawkins should have done something different.

27   ////

28   ////

1    Plaintiff has been provided multiple opportunities to allege facts demonstrating that Dr.

2    Hawkins was deliberately indifferent, yet has failed to do so.  Accordingly, plaintiff's claims

3    should be dismissed without leave to amend.

4    III.  Conclusion

5        The second amended complaint fails to state cognizable Eighth Amendment claims

6    against defendants.  In addition to his original pleading, plaintiff has been granted two

7    opportunities to attempt to state a claim against these defendants.  It does not appear that plaintiff

8    can allege facts demonstrating that defendants were deliberately indifferent to plaintiff's serious

9    medical needs.  Thus, such claims should be dismissed without leave to amend.

10       In accordance with the above, IT IS HEREBY RECOMMENDED that plaintiff's second

11   amended complaint be dismissed without prejudice.

12       These findings and recommendations are submitted to the United States District Judge

13   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14   after being served with these findings and recommendations, plaintiff may file written objections

15   with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that

17   failure to file objections within the specified time may waive the right to appeal the District

18   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19   Dated:  March 17, 2016

20

21   /jose0332.56

22                                                        KENDALL J. NEWMAN
                                                          UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28

11